IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CURTIS L. BUSH,

                Plaintiff,

vs.

MAPES CANOPIES, LLC,

                Defendant.

**4:17CV3135**


**MEMORANDUM
AND ORDER**

This matter is before the court on further review of Plaintiff's Complaint (filing no. 1) pursuant to 28 U.S.C. § 1915(e)(2).

## I. BACKGROUND

Plaintiff Curtis L. Bush filed his Complaint (filing no. 1) in this matter on October 10, 2017. Liberally construed, Plaintiff brings this action under the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII").

On April 26, 2018, the court conducted an initial review of Plaintiff's Complaint. (Filing No. 12.) The court determined it was unclear whether Plaintiff filed his suit in a timely manner. The court ordered Plaintiff to file a copy of his right-to-sue notice with the court or, alternatively, to amend his complaint to allege whether he exhausted his administrative remedies with the Equal Employment Opportunity Commission ("EEOC")/Nebraska Equal Opportunity Commission ("NEOC") and, if so, the date on which he received a right-to-sue notice. (*Id.* at CM/ECF p. 5.)

Plaintiff filed a copy of his right-to-sue notice received from the EEOC. (Filing No. 13.) The document shows that Plaintiff filed suit within 90 days of his

receipt of his right-to-sue notice. *See* 29 U.S.C. § 626(e); 42 U.S.C.A. § 2000e-5(f)(1). The court now conducts further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2).

## II. DISCUSSION OF CLAIMS

The court summarized the Complaint's allegations and set forth the applicable legal standards on initial review in its April 26, 2018 Memorandum and Order and incorporates the same herein. (Filing No. 12 at CM/ECF pp. 1–3.) Briefly, Plaintiff alleges Defendant, his former employer, discriminated against him on the basis of age, in violation of the ADEA, 29 U.S.C. §§ 621-634, and the Nebraska Age Discrimination in Employment Act ("NADEA"), NEB. REV. STAT. §§ 48-1001-1010, and on the bases of race, color, and religion in violation of Title VII, 42 U.S.C. §§ 2000e-2000e-17, and the Nebraska Fair Employment Practice Act ("NFEPA"), NEB. REV. STAT. §§ 48-1101-1126.

A plaintiff need not plead facts sufficient to establish a prima facie case of employment discrimination in his complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002) (holding a complaint in employment discrimination lawsuit need not contain "facts establishing a prima facie case," but must contain sufficient facts to state a claim to relief that is plausible on its face), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, the elements of a prima facie case are relevant to a plausibility determination. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (stating elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim"); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

## A. Age Discrimination

Plaintiff asserts claims under the ADEA and the NADEA. The ADEA protects individuals over 40 and prohibits an employer from failing or refusing to hire, discharging, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a); *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010). The NADEA offers similar protection. *See* Neb. Rev. Stat. § 48-1004(1)(a). The NADEA is interpreted in conformity with the ADEA, and the court will apply the same analysis to both claims. *See Billingsley v. BFM Liquor Mgmt., Inc.*, 645 N.W.2d 791, 801 (Neb. 2002). The court looks to the elements of a prima facie case of discrimination in assessing whether Plaintiff has pled enough facts to make entitlement to relief plausible.

Plaintiff's claim of age discrimination is most naturally read as raising a disparate treatment claim. Disparate treatment cases present the most easily understood type of discrimination. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Disparate treatment occurs where an employer treats particular individuals less favorably than others because of a protected trait. *Id.* To set forth a prima facie claim of age discrimination, a plaintiff must establish that (1) he is over 40; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly-situated employees outside the class were treated more favorably. *Anderson*, 606 F.3d at 523. "The hallmark of an ADEA disparate-treatment claim is intentional discrimination against the plaintiff on account of the plaintiff's age." *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1331 (8th Cir. 1996). This requires proof that age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 176-78 (2009).

Here, Plaintiff alleged that he is over 40. In addition, the court can reasonably infer he was qualified for his position because he alleged he had been hired by the Defendant as a production worker after starting out as a temporary worker and later assumed the duties of an assistant supervisor. (*See* Filing No. 1 at

3

CM/ECF pp. 1–2.) The court interprets Plaintiff's allegations to suggest that there were two actions against Plaintiff that he considers adverse. The first was that he received "less favorable wages." (*Id*. at CM/ECF p. 1.) The second was not being promoted to the assistant supervisor position despite taking over the duties of that position. (*Id*. at CM/ECF pp. 1–2.)

While receiving less favorable wages is certainly an adverse employment action, the court cannot reasonably infer from the facts alleged that Plaintiff's age was a cause of the unfavorable wages. Plaintiff alleges that he received a $0.25/hour raise when he began performing the assistant supervisor duties, but after he was terminated, his replacement received a $1.00/hour raise despite having less experience. However, Plaintiff alleges that his replacement was approximately 42 years old. (*Id*. at CM/ECF pp. 4–5.) Thus, Plaintiff has not alleged facts suggesting that persons outside the protected class were treated more favorably.

Plaintiff's lack of promotion to the assistant supervisor position despite assuming the duties of the position constitutes an adverse employment action. Additionally, his allegations that the individual whose duties he assumed was approximately twenty-five years old satisfy the fourth element that similarly-situated employees outside the class were treated more favorably. Plaintiff has, therefore, stated a plausible age discrimination claim. The court cautions Plaintiff that this is only a preliminary determination based solely on the allegations in the Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

**B. Title VII**

Plaintiff also brings claims under Title VII and the NFEPA. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-

2(a)(1). The same analysis governs Plaintiff's claims under Title VII and the NFEPA. *See Leiting v. Goodyear Tire & Rubber Co.*, 117 F.Supp.2d 950, 955 (D. Neb. 2000); *Father Flanagan's Boys' Home v. Agnew*, 590 N.W.2d 688, 693 (Neb. 1999). As noted above, the court has construed the Complaint as raising claims of race and religious discrimination.

### i. Hostile Work Environment

To prove a claim for hostile work environment based on race or religion, Plaintiff must establish that (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of employment. *Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011) (stating elements of race-based hostile work environment claim); *Winspear v. Cmty. Dev., Inc.*, 574 F.3d 604, 609–10 (8th Cir. 2009) (Smith, C.J., dissenting) (citing *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 550 (8th Cir.2007)) (discussing elements of religious-based hostile work environment claim).

"Conduct of others in a workplace 'affects a term, condition, or privilege of employment' under Title VII only if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Malone*, 646 F.3d at 517 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The court considers the conduct "'as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim.'" *Id.* (quoting *Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005)). "All of the circumstances are relevant, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

Here, Plaintiff alleged a plausible hostile work environment claim based on both race and religious discrimination. Plaintiff alleges that from May 2015 to

March 2016 he complained many times to Blake Foote ("Foote"), his immediate supervisor, about the harassment he was receiving from two employees, Michael Jose ("Jose") and Joel Jones ("Jones"), both of whom were non-black and atheist. Jose and Jones would walk by Plaintiff's assigned work area and "demand that he turn that Christian 'bullshit' [music] off." (Filing No. 1 at CM/ECF p. 3.) On one occasion, Jose told Plaintiff "that Jesus was not real" and he was going to break Plaintiff's "little legs" because of the music Plaintiff was playing. (*Id*.) Also, Jose and Jones would sometimes walk by Plaintiff's area and remove the cord from his stereo. (*Id*. at CM/ECF p. 4.) Plaintiff also alleges that in August 2015 he was informed by second-shift supervisor, Joe Stoppel, that Jones had called Plaintiff "a monkey with a banana because he was using a yellow box cutter." (*Id*.) When Plaintiff confronted him, Jones did not deny making this statement, "but just laughed in his face." (*Id*.) Plaintiff reported the incident to his white supervisor Foote and "nothing ever became of it." (*Id*.)

Plaintiff also describes another incident in February 2016 in which another non-black employee, Mike Reed ("Reed"), called Plaintiff a "nigger" because he refused to tune into Reed's entertainment, but instead sung along with the gospel music playing on Plaintiff's cell phone. (*Id*. at CM/ECF p. 5.) After Plaintiff reported the incident, management concluded "that all this [was] because of [Plaintiff's] choice of music" and prohibited cell phones on the work floor, especially for playing music. (*Id*. at CM/ECF pp. 6–7.) Management still permitted employees to listen to the radio, and Plaintiff listened to a Christian music station. In mid-March 2016, Jones walked by Plaintiff's area and told him that he was "hard headed and stupid [be]cause didn't nobody wanna walk by and hear NO Jesus music." (*Id*. at CM/ECF p. 7.) Plaintiff complained to his supervisor and his complaint was relayed to management. In response, management determined that only two stations could be played in the workplace, effectively banning Plaintiff from listening to Christian music in his work area. Within two weeks, Plaintiff alleges his supervisor Foote "yelled at and cursed out [Plaintiff] . . . for no reason and [was] told to get out and don't come back." (*Id*. at CM/ECF pp. 7–8.) After he

was terminated, Plaintiff alleges all employees were allowed to resume using cell phones on the work floor to play music.

In light of the liberal pleading standard afforded to pro se litigants, the court finds that Plaintiff has stated a plausible hostile work environment claim and the claim may proceed to service of process. The court cautions Plaintiff that this is only a preliminary determination based solely on the allegations in the Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

### ii. Disparate Treatment

Liberally construed, Plaintiff alleges a disparate treatment claim based on race. To state a prima facie claim of race discrimination, Plaintiff must allege facts showing that (1) he is a member of a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). "The required prima facie showing is a flexible evidentiary standard, and a plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Id.* (internal quotations and citations omitted).

The Eighth Circuit Court of Appeals "has two lines of cases on the standard to determine whether employees are 'similarly situated' at the prima facie stage of the *McDonnell Douglas* test." *Id.* (quoting *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009)). "One line sets a 'low threshold,' requiring only that the employees are 'involved in or accused of the same or similar conduct and are disciplined in different ways. The other line more rigorously requires that the employees be 'similarly situated in all respects.'" *Id.* (quoting *Wimbley*, 588 F.3d at 962).

Here, Plaintiff has alleged a plausible disparate treatment claim. Plaintiff alleged his job performance was satisfactory, and his allegations suggest that there were three actions against Plaintiff that he considers adverse. As with his age discrimination claims, the first two actions were Plaintiff's receipt of "less favorable wages" and not being promoted to the assistant supervisor position despite taking over the duties of that position. (Filing No. 1 at CM/ECF pp. 1–2.) The third was his 3-day suspension after reporting the incident with Reed.

Plaintiff's allegations regarding his less favorable wages and lack of promotion are sufficient at this stage to give rise to an inference of discrimination. Plaintiff alleges that he received a $0.25/hour raise when he began performing the assistant supervisor duties, but after he was terminated, his replacement, who is not in Plaintiff's protected class, received a $1.00/hour raise despite having less experience. In addition, Plaintiff alleges he assumed the duties of the assistant supervisor position after the Defendant fired the previous assistant supervisor, a white male, yet Plaintiff was not promoted to the assistant supervisor position.

With respect to the incident involving Reed, Plaintiff alleges that he reported to management that Reed called Plaintiff a "nigger." Matt Parde, the Defendant's president and a white man, asked Plaintiff to give a written statement as to what occurred. After Plaintiff did so, Parde asked Plaintiff whether "it wasn't just one of those things like Parde witnessed in college" and stated, "I [Parde] heard black guys call each other nigger all the time." (Filing No. 1 at CM/ECF p. 6.) Plaintiff advised Parde that Reed was not black and had threatened Plaintiff and was ready to fight him. Plaintiff alleges that, on the following day, management suspended both Reed and Plaintiff for three days because Reed denied calling Plaintiff a "nigger." Plaintiff states he "made the management aware of his disappointment in their decision to suspend him for reporting being called a nigger by a hostile person of a different race." (*Id*.)

Based on the foregoing allegations, the court finds Plaintiff's disparate treatment claims may proceed to service of process. However, the court cautions

Plaintiff that this is only a preliminary determination based solely on the allegations in the Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

## C. Other State-Law Claims

Liberally construed, Plaintiff alleges state-law claims of slander and intentional infliction of emotional distress against the Defendant. At this time, the court makes no finding with respect to its jurisdiction over these claims or whether they state a claim upon which relief may be granted. In order to ensure a just and fair resolution of this matter, Plaintiff's state-law claims will be allowed to proceed to service of process against the Defendant along with the discrimination claims detailed above.

IT IS ORDERED that:

1.    This matter may proceed to service of process against the Defendant Mapes Canopies, LLC. To obtain service of process on the Defendant, Plaintiff must complete and return the summons form that the clerk of the court will provide. The clerk of the court shall send one summons form and one USM-285 form to plaintiff, together with a copy of this Memorandum and Order. Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the clerk of the court. In the absence of the forms, service of process cannot occur.

2.    Upon receipt of the completed forms, the clerk of the court will sign the summons forms and forward them together with a copy of the Complaint (filing no. 1), this court's previous Memorandum and Order on initial review (filing no. 12), and a copy of this Memorandum and Order to the United States Marshals Service for service of process on the Defendant Mapes Canopies, LLC. The Marshals Service shall serve the Defendant using any of the following methods: personal, residence, certified mail, or designated delivery service. *See*

Federal Rule of Civil Procedure 4(e), (h); Neb. Rev. Stat. § 25-509.01 (Reissue 2016).

3.     The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[1]

4.     Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

5.     Plaintiff is hereby notified that failure to obtain service of process on the Defendant within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

6.     The clerk of the court is directed to set a pro se case management deadline in this case with the following text: **January 22, 2019**: service of process to be completed.

7.     The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

8.     Because this non-prisoner case is proceeding to service of process, and at the direction of the court, this case is removed from the pro se docket. The

---

[1] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).

clerk's office shall randomly assign new judges to this case and request a reassignment order from the Chief Judge.

Dated this 24th day of October, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge